**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:  KA & KM DEVELOPMENT,
INC.,                                    CASE NO: 6:09-bk-06245-KSJ

    Debtor.                          ADV. PROC. NO: _____
_____ /


CHARLES FLEMING,

    Plaintiff,

v.

KA & KM DEVELOPMENT, INC.,
a Florida Corporation,
SUNTRUST BANK, a Georgia
bank corporation, and
TITLECONCEPTS, LLC, a
Florida limited liability
company,

    Defendants.
_____ /

## ADVERSARY COMPLAINT

    CHARLES FLEMING, by and through undersigned counsel, hereby files this adversary proceeding against Defendants, KA & KM DEVELOPMENT, INC. (hereinafter the "DEVELOPER" or "Debtor"), SUNTRUST BANK ("SUNTRUST") and TITLECONCEPTS, LLC ("TITLE CONCEPTS") and alleges:

## JURISDICTION, VENUE AND PARTIES

    1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1334 and 157(a).  The amount at issue exceeds $75,000.00.

    2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.    This matter is a core proceeding within the meaning of 28 U.S.C. §157(b).

1

4.    Plaintiff FLEMING is a natural person, residing in Gorey, Ireland.

5.    Defendant DEVELOPER is a Florida corporation whose principal place of business is within the Middle District, Orlando Division.

6.    Defendant is also the developer of that certain condominium project located on International Drive in Orlando, Orange County, Florida, known as "The Villas at Lake Eve, a Condominium" (hereinafter the "Condominium Project").

7.    Defendant SUNTRUST is a Georgia corporation authorized to do and doing business in Florida and within the Middle District, Orlando Division.

8.    Defendant TITLE CONCEPTS is a Florida limited liability company which operates as a bonded and licensed title insurance agent and escrow agent, and is doing business within the Middle District of Florida, Orlando Division.

## GENERAL ALLEGATIONS

9.    On May 4, 2007, FLEMING executed that certain contract labeled "Contract for Purchase and Sale, Villas at Lake Eve, a Condominium" - a true and correct copy of which is attached hereto as Exhibit "A" (hereinafter referred to as the "Contract").

10.   The face page of the Contract states that the "Contract Date" is April 18, 2007, although Mr. FLEMING did not execute same until May 6, 2007. DEVELOPER only recently returned a fully executed copy of the Contract to Mr. FLEMING in November 2008, showing that the DEVELOPER executed same on May 15, 2007.

11. In accordance with the Contract, FLEMING agreed to purchase, and the DEVELOPER agreed to sell, a condominium unit identified as "Unit 807" of the Condominium Project together with a fractional interest in the common elements (whose physical address is 12388 International Drive South, Orlando, Florida 32821; hereinafter referred to as the "Unit" or the "Condominium Unit").

12. After executing the Contract, Mr. FLEMING tendered deposits to the DEVELOPER in the total principal amount of $166,800.00.

13. At the time Mr. FLEMING executed the Contract, certain documents required to be disclosed to buyers pursuant to §718.504, Florida Statutes, including the (i) Prospectus and Declaration of Condominium, (ii) Common Element Ownership Interests, (iii) Plot Plan, Floor Plan, and Survey, (iv) By-laws, (v) Schedule of Estimated Assessments, (vi) Legal Description of the Condominium, (vii) Question and Answer Sheet, and other documents describing the Condominium (hereinafter collectively referred to as the "§718.504 Disclosure Documents"), had not been compiled into a single volume and were not provided for review and inspection by Plaintiff.

14. Alternatively, any documents the DEVELOPER might contend were allegedly tendered to Mr. FLEMING on or around May 6, 2007 were only in draft form, not final form, and have materially changed in scope since that time. Furthermore, such documents which the DEVELOPER provided, if any, were not acknowledged by a signed receipt.

15. §718.503(1)(a)1., Florida Statutes, states as follows:

(1)  DEVELOPER DISCLOSURE

(a) *Contents of Contracts* - Any contract for the sale of a residential unit ... shall :

1. Contain the following legend, in conspicuous type:  THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

16.  §718.503(b), Florida Statutes, states as follows:

(b) Copies of documents to be furnished to prospective buyer or lessee.--Until such time as the developer has furnished the documents listed below to a person who has entered into a contract to purchase a residential unit or lease it for more than 5 years, the contract may be voided by that person, entitling the person to a refund of any deposit together with interest thereon as provided in s. 718.202 . The contract may be terminated by written notice from the proposed buyer or lessee delivered to the developer within 15 days after the buyer or lessee receives all of the documents required by this section. . . . The documents to be delivered to the prospective buyer are the prospectus or disclosure statement with all exhibits, if the development is subject to the provisions of s. 718.504.

17.  In November 2008, FLEMING requested a complete and final set of the §718.504 Disclosure Documents from the DEVELOPER.  The DEVELOPER ignored this request and, to date, has not responded to same.

18.  In a letter dated December 22, 2008, and well within two

years of the Contract execution date, FLEMING notified the DEVELOPER of the termination of the Contract and the reasons therefore (a true and accurate copy of which is attached hereto as Exhibit "B" - hereinafter referred to as the "Termination Letter").

19. The Contract is devoid of any notice of the applicability of, or any exemption from, the Interstate Lands Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701, *et seq*.

20. The Contract is further improperly devoid of any notice of the applicability of, or any exemption from, the Florida Uniform Land Sales Practices Law ("FULSPL"), §498.001, Florida Statutes, *et seq.*

21. Mr. FLEMING originally filed a State Court lawsuit in January 2009 against the DEVELOPER (*Fleming v. KA and KM Development, Inc.*; Orange County Circuit Court; Case No: 48-2009-CA-002053-O). The DEVELOPER's current counsel filed an Answer in the state court action on the developer's behalf in February 2009. (As described below, the DEVELOPER's filing for bankruptcy has stayed the state court proceeding.)

22. On May 6, 2009, the DEVELOPER/Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code and has continued in the management and operation of the Condominium Project and businesses pursuant to §§1107 and 1108 of the Code.

23. As of the time of the Petition, the DEVELOPER/Debtor had been unable to close any sales of any condominium units with any prospective purchasers. It had not fully paid its general contractor, may have been in default on its construction mortgage,

and has never recorded a declaration of condominium in the public records of Orange County, Florida. In other words, the DEVELOPER could not legally convey any condominium units without paying off preexisting lien holders and without recording legal descriptions of units and common elements which are typically set forth in a recorded declaration of condominium; thus, the Developer found it necessary to seek bankruptcy protection.

24. Upon information and belief and subject to discovery, Defendant TITLECONCEPTS has escrowed some or all of Mr. FLEMING's substantial deposit monies, perhaps with interest, since on or around May 2007.

25. The DEVELOPER attempted to claim some right, within the Contract, to use "up to 20% of the Contract price" for "development" purposes but was not authorized to do so because it violated the requirements of §718.202, Florida Statutes. *See also,* Count VII*, infra.*

26. The DEVELOPER/Debtor is expected to propose, in its Plan of Reorganization, that it remain in title to all units and common elements within the Condominium Project (as opposed to selling any units to third parties, including existing contract purchasers), operate the project as a hotel, and then pay a significant portion of the income generated from rentals to its construction lender, Defendant SUNTRUST. In order to accomplish such a Plan, the DEVELOPER must reject all outstanding executory contracts with third-party purchasers, including Mr. FLEMING. If, however, SUNTRUST does not agree to this type of Plan, foreclosure will

likely ensue with disputes arising as to various lien priorities, including that of contract purchasers, such as FLEMING, who demands return of the full amount of his deposits.

27.   Plaintiff has retained the law firm of Peter R. McGrath, P.A., to prosecute this action and has agreed, and is obligated, to pay  reasonable attorneys' fees and costs for services rendered.

28.   All conditions precedent to the filing of this proceeding have occurred, been performed, or been waived.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF INTERSTATE LAND SALES ACT

29.   Plaintiff FLEMING re-alleges Paragraphs 2 through 28 above as if set forth in their entirety herein.

30.   This Court has jurisdiction to interpret the provisions of the Interstate Lands Sales Full Disclosure Act ("ILSA"), 15 U.S.C. § 1701, *et seq.*, pursuant to 15 U.S.C. §1719 and 28 U.S.C. §1331.  Plaintiff also seeks compensatory and supplemental damages against DEVELOPER in excess of $75,000.00, exclusive of interest, attorneys' fees and costs.

31.   Plaintiff is a "purchaser" within the meaning of 15 U.S.C. § 1701(10), and is not engaged in the business of constructing residential, commercial, or industrial buildings for the purpose of resale or lease of such lots to purchasers or persons engaged in such business within the meaning of 15 U. S. C. § 1702.

32.   The Condominium Unit DEVELOPER offered for sale to Mr. FLEMING in the Contract is a residential condominium and "lot"

within the meaning of 15 U. S. C. § 1702, and includes the right to exclusive use and possession of same. Under a proposed (but never filed and recorded) declaration of condominium, the DEVELOPER offered to allow prospective purchasers of Condominium Units the right, but not the obligation, to rent or lease such units on a short or long term basis.

33. Defendant is a "developer" within the meaning of 15 U.S.C. §§ 1701(5) and 1709(a), of more than 100 planned and actual condominium units at the subject Condominium Project.

34. The DEVELOPER marketed the Condominium Project through means or instruments of transportation or communication in intrastate, interstate and international commerce and the mails, as regulated by 15 U.S.C. §§ 1703.

35. DEVELOPER may contend that it relies on a two year completion deadline in an attempt to claim an exemption from ILSA pursuant to 15 U.S.C. §1702 (which is denied in that no such provision is contained in the parties' Contract).

36. The Defendant, however, is not entitled to any exemption from the provisions and requirements of ILSA. Any language in the Contract (or otherwise based upon estimated construction completion dates) suggesting that the DEVELOPER may be able to complete construction and close within two years is neither binding nor unconditional and is, hence, illusory. In essence, the DEVELOPER's duty to timely perform is vitiated by the following contingencies and exceptions set forth in the Contract:

    (a)   Paragraph 5 of the Contract states that the DEVELOPER may schedule a closing at any time convenient to it after the

declaration of condominium and related documents are recorded and after "a temporary (or permanent) certificate of occupancy" is procured. Even estimated "completion dates" indicate that the DEVELOPER could not complete construction and record its declaration by May 6, 2009 (i.e., two years after FLEMING's execution of the Contract). Still further, the Contract fails to provide for the purchaser's damages if the DEVELOPER delays construction beyond two years;

(b) Paragraph 7(b) of the Contract improperly limits the Purchaser's remedies upon the Seller's default, prohibiting suits for specific performance and damages;

(c) Paragraph 11 of the Contract improperly allows the DEVELOPER to make "any renovations" to the units and common elements for the Condominium project, and that the Seller "will not be obligated to give any reduction in the purchase price, or reimburse any expense, or place any funds in escrow due to ongoing renovations at the time of closing." Similarly, Paragraph 26(i) of the Contract improperly allows the DEVELOPER to make changes to the Unit at any time before and after closing without any recourse to the Purchaser;

(d) Paragraph 16 of the Contract improperly declares that "actual construction" of the condominium unit is not subject to a firm set of plans or specifications and changes are not subject to Mr. FLEMING's approval;

(e) Paragraph 26(g) of the Contract improperly declares that "floor plans, dimensions, and square footage are only approximations" and provides the Purchaser with no remedies for any changes to same. Instead, the DEVELOPER unilaterally declares that "[a]ny purchaser who is concerned about any representations regarding the floor should do his/her own investigation as to the dimensions, measurements and square footage of his/ her Unit;"

37. In sum, the DEVELOPER's Contract violates ILSA for the following reasons:

(a) the Contract fails to identify any actual basis for an exemption from the reporting requirements, notices and other strictures of ILSA. Therefore, Mr. FLEMING was not given an opportunity to knowingly and voluntarily agree to, or waive any provision of, ILSA, let alone §1702(a)(2); and

(b) The Contract contains such a plethora of excuses and

> exceptions described in Paragraph 36, *supra*, making it impossible for Plaintiff to know what was offered for sale, whether, when or how anything represented as being sold could and would change, and whether anything would be completed within a two year deadline.

38.  Without a valid ILSA exemption, DEVELOPER was and is obligated, under 15 U.S.C. §1703(a)(1)(A), to file a statement of record satisfying 15 U.S.C. §1706, and to furnish a printed Property Report pursuant to 15 U.S.C. §1707.

39.  Without a valid ILSA exemption, DEVELOPER was and is obligated, pursuant to 15 U.S.C. §1703(a)(1)(B), to prepare and present a Property Report in advance of executing any contracts with purchasers, including Mr. FLEMING.

40.  Without a valid ILSA exemption, DEVELOPER was and is required to provide a seven day right of cancellation period in the Contract pursuant to 15 U.S.C. §1703(b).

41.  Without a valid ILSA exemption and without including a required property report, DEVELOPER also violated 15 U.S.C. §1703(c) by failing or refusing to include a two year right of revocation period in the Contract.

42.  Without a valid ILSA exemption, DEVELOPER has further violated the requirement of 15 U.S.C. §1703(d)(2) to inform purchasers that they have a right to notice of default from sellers, and then a twenty day cure period thereafter.

43.  Without a valid ILSA exemption, DEVELOPER further failed or refused to provide notice to FLEMING of his right to recover his deposits pursuant to 15 U.S.C. §1703(d)(3).

44.  Without a valid ILSA exception and failing to provide the

required Property Report and notices, Mr. FLEMING is entitled to rescind the subject Contract in accordance with 15 U.S.C. §1711(b), and to recover reasonable attorneys' fees and costs under 15 U.S.C. §§1703 and 1709.

45.   Due to the DEVELOPER failing to qualify for a valid ILSA exception and failing to provide the required Property Report and notices, Mr. FLEMING is entitled to the *immediate* return of his deposit monies in excess of 15% of the Contract price pursuant to 15 U.S.C. §1703(d)(3) - and then continue to pursue claims in this cause for the remaining portion of the Contract price - together with additional compensatory and statutory damages, interest, attorneys' fees and costs.

**COUNT II:**
**VIOLATIONS OF FLORIDA UNIFORM**
**LAND SALES PRACTICES LAW**

46.   Plaintiff incorporates Paragraphs 2 through 28 above as if set forth in their entirety herein.

47.   This is an action for damages against DEVELOPER based upon the DEVELOPER's violations of the Florida Uniform Land Sales Practices Law ("FULSPL"), §498.001, Florida Statutes, *et seq*.  This Court has jurisdiction to determine violations of FULSPL pursuant to §498.021, Florida Statutes and 28 U.S.C. §1331.  Plaintiff also seeks damages for the DEVELOPER's violations of FULSPL in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs.

48.   DEVELOPER is a "sub-divider" of "subdivided lands" as described in §498.05(20) and (21), Florida Statutes.

49.   DEVELOPER used various forms of intrastate and interstate

advertising to solicit sales for condominium units within its Condominium Project as defined in §498.005(1) and (13), Florida Statutes.

50. Because the Condominium Project consisted of more than 45 lots offered to more than 45 persons or entities, the DEVELOPER was required to register said Project with the Division of Land Sales, Condominiums and Mobile Homes pursuant to §498.23, Florida Statutes.

51. DEVELOPER has not claimed any valid exemption, under §498.025, Florida Statutes, in the Contract or otherwise.

52. Without the appropriate registration, DEVELOPER was prohibited from disposing of, or from participating in, the disposition of any interest in the subdivided lands unless:

    a.   the prospective purchaser is given an unconditional 30-day refund privilege extending from the time that the fully executed agreement to purchase is received by the purchaser;

    b.   the sub-divider includes this unconditional refund privilege in the agreement to purchase and in the public offering statement; and

    c.   prior to the execution of the agreement by the purchaser, the sub-divider must furnish the prospective purchaser with an approved synopsis of the sales script and a current public offering statement, by mail or personal delivery, and the purchaser must certify receipt of the documents in writing.

53. Pursuant to §498.061, Florida Statutes, FLEMING is entitled to rescind the Contract as a result of the DEVELOPER's violations of FULSPL, and to recover his substantial deposit funds, interest, attorneys' fees and costs.

## COUNT III: BREACH OF CONTRACT

54.    Plaintiff FLEMING re-alleges Paragraphs 2 through 28 above as if set forth in their entirety herein.

55.    This is an action against Defendant DEVELOPER for damages exceeding $75,000.00, exclusive of interest, attorneys' fees and costs.

56.    Paragraph 5 of the Contract states that the DEVELOPER may schedule a closing at any time convenient to it after the declaration of condominium and related documents are recorded and after "a temporary (or permanent) certificate of occupancy" is procured.    Even estimated "completion dates" as of at least December 2008 (the time of Mr. FLEMING's Termination Letter) indicate that the DEVELOPER breached the Contract because it could not have completed construction *and recorded its declaration of condominium* by May 6, 2009 (or within two years of the Contract execution date and coincidentally the date of its bankruptcy filing).    Indeed, even as of the present date, the DEVELOPER has filed no declaration of condominium and hence has neither scheduled nor completed any closings with prospective purchasers, including FLEMING.

57.    DEVELOPER further failed or refused to provide FLEMING with final versions of the Condominium Disclosure Documents required under §718.504, Florida Statutes (and as detailed in Paragraphs 67 through 73, *infra*).    Upon information and belief and subject to discovery, DEVELOPER breached the Contract because the final versions of such documents would reveal that the DEVELOPER

never intended to sell fee simple interests in condominium units or otherwise made, or intends to make in the current bankruptcy, material changes to the Condominium Project.

58. Still further, by late-December 2008, the DEVELOPER allowed $4.7 million in construction liens to be recorded against the Condominium Project. Accordingly, no sales for units could have closed prior to May 6, 2009, without the DEVELOPER first obtaining releases or satisfactions with respect to said clouds on title. No such releases had been obtained as of the two-year deadline to close. Hence, by its own actions, the DEVELOPER has breached the Contract by making it impossible to close within the two year deadline.

59. Based upon these breaches of the Contract by the DEVELOPER, Mr. FLEMING was not then, and is not now, obligated to close under the Contract, and is entitled to return of his deposits.

60. As a result of such defaults, Mr. FLEMING has been damaged, and is entitled to reimbursement of his $166,800.00 deposit, together with interest, attorneys' fees and costs of collection pursuant to Paragraph 7 of the Contract.

## COUNT IV: CONVERSION

61. Plaintiff FLEMING incorporates Paragraphs 2 through 28 and 56 through 59 above as if set forth in their entirety herein.

62. This is an action for conversion, seeking damages against DEVELOPER in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

63.  DEVELOPER wrongfully converted funds belonging to Plaintiff to the DEVELOPER's own use.

64.  As a result of such conversion of his funds, Mr. FLEMING has been damaged.

65.  Mr. FLEMING's resulting damages include his lost deposit funds, and loss of other real estate opportunities.

## COUNT V: CANCELLATION AND RESCISSION

66.  Plaintiff FLEMING incorporates Paragraphs 2 through 28 above as if set forth in their entirety herein.

67.  This is an action against DEVELOPER for cancellation and rescission of the Contract, seeking compensatory and supplemental damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

68.  In accordance with the Contract and §718.503, Florida Statutes, Mr. FLEMING was entitled to a fifteen (15) day period, from the time he received the complete set of §718.504 Disclosure Documents from the DEVELOPER, to void the Contract by delivering written notice to the DEVELOPER of his intention to cancel.

69.  Plaintiff timely exercised his right to cancel the Contract by delivering the Termination Letter on December 22, 2008, Exhibit "B" hereto, and therein demanded reimbursement of his substantial deposit monies, interest and attorneys' fees.

70.  Alternatively, in the event that the DEVELOPER provided the full allotment of §718.504 Disclosure Documents to him in the May 2007 time frame (which is denied), Mr. FLEMING remains entitled to terminate and rescind the Contract since there will apparently

never be a "final" version of same given the nature of the current bankruptcy, by which the Debtor Developer seeks permission to make material changes to the Condominium Project, the Condominium Unit, and the condominium association.

71.  In the further alternative, Mr. FLEMING should have been informed that he was entitled to another rescission decision on or around August 2008.  At that time, DEVELOPER informed prospective purchasers, including Mr. FLEMING, for the first time that all Condominium Units were to be reclassified as "commercial investments" and/or as part of a "resort condominium hotel," and with mandatory management by its affiliate or subsidiary, Sky Resort Management, LLC.  This new management agreement, moreover, would significantly restrict the prospective owners' use rights for the Condominium Units as compared with the version of condominium documents provided to FLEMING at the time he executed the Contract.

72.  Still further, during the time in which the DEVELOPER was demanding that all contract purchasers (including Mr. FLEMING) "prepare to close" (December 2008 and January 2009), the DEVELOPER failed and refused to disclose additional material facts affecting the future viability of the Condominium Project, and which entitle Mr. FLEMING to terminate and rescind the Contract, including the following:

  a.  that the DEVELOPER had not and could not fully pay its general contractor, resulting in a large construction lien being recorded against the Condominium Project;

  b.  that the DEVELOPER was unable to service its debt and was facing foreclosure by its construction lender;

  c.  that the DEVELOPER was preparing to file for bankruptcy

protection; and

    d.    that the DEVELOPER would be unable to close with anyone since it had not and could not record a declaration of condominium (and hence could not provide legal descriptions by which to convey title to any units), and perhaps because to do so would ultimately jeopardize its ability to propose and obtain approval for a particular reorganization plan.

73.    The DEVELOPER has failed and refused to reimburse any portion of Plaintiff's deposits, interest and attorneys' fees pursuant to §718.506(2), Florida Statutes.

## COUNT VI: VIOLATIONS OF §718.202, FLA. STAT.

74.    Plaintiff incorporates Paragraphs 2 through 28, 55 through 60 and 62 through 65 above as if set forth in their entirety herein.

75.    This is an action for damages exceeding $75,000.00 and equitable relief against Defendants DEVELOPER and TITLE CONCEPTS for violations of §718.202, Florida Statutes.

76.    The DEVELOPER attempted to claim some right, within the Contract, to use "up to 20% of the Contract price" (i.e., two-thirds of Mr. FLEMING's total Contract deposits) for "development" purposes. The DEVELOPER, however, violated the notice provisions to purchasers under §718.202(3), Florida Statutes, by failing to place required language concerning escrowed funds on the first page of the Contract *and* immediately above the place for the signature of the buyer. *Id.*

77.    The DEVELOPER and TITLE CONCEPTS further violated §718.202, Florida Statutes, and the terms of a written or implied escrow agreement, by failing to first place such funds into an

appropriate interest bearing escrow account,[1] later disburse such funds for proper purposes, and provide the escrow beneficiary, Mr. FLEMING, with notice of such activity with respect to his deposits.

78.  Thus, any omissions to or withdrawals from the TITLE CONCEPTS' escrow fund for "development" purposes were improper and Mr. FLEMING elects to void the Contract under §718.202(5), Florida Statutes.

79.  As a result of the DEVELOPER's and TITLE CONCEPTS' joint and several escrow errors and omissions, Mr. FLEMING is entitled to rescind the Contract, to a judgment for the amount of his deposits, jointly and severally, against DEVELOPER and TITLE CONCEPTS, or alternatively, an order or judgment returning $111,200.00 to the DEVELOPER/Debtor's estate and/or for a ruling that FLEMING's statutory damages are not included within, or are no longer part of, the bankruptcy estate.

### COUNT VII: DECEPTIVE AND UNFAIR TRADE PRACTICES

80.  Plaintiff FLEMING incorporates Paragraphs 2 through 28, 30 through 45, 47 through 53, 55 through 60, 62 through 65, 67 through 73 and 75 through 79 above as if set forth in their entirety herein.

81.  This is an action for damages against Defendant DEVELOPER in excess of $75,000.00, exclusive of interest, costs and attorneys' fees, for violation of the Florida Deceptive and Unfair

---

[1]  Based upon information and belief, proposed discovery and the implications of SUNTRUST's recent motions in the DEVELOPER/Debtor's Chapter 11 case for relief from stay and to be substituted as escrow agent for the parties, it appears that only 10% of the Contract price, rather than the "full" amount of the deposit (30% of the contract price) was ever escrowed for Mr. FLEMING's benefit by the DEVELOPER and TITLE CONCEPTS.

Trade Practices Act ("FDUTPA"), §501.201, Florida Statutes, et seq.

82. Plaintiff is a consumer of services provided by this Defendant.

83. Defendant engaged in deceptive and unfair trade practices by fraudulently or negligently soliciting deposits from Plaintiff FLEMING in violation of §718.503, Florida Statutes, by either intentionally or negligently failing to provide the §718.504 Disclosure Documents at the time he executed the Contract, and then again refusing to refund deposits upon timely demand by Plaintiff after DEVELOPER refused an additional request for a final and complete set of Disclosure documents in November 2008. *See also* Paragraphs 99 through 105, *infra*.

84. Defendant further engaged in deceptive and unfair trade practices by failing to comply with ILSA, FULSPL and §718.202, Florida Statutes as set forth above.

85. The DEVELOPER knew, or should have known, that its practices were unfair and deceptive.

86. The DEVELOPER's practices as alleged here were and are, upon information and belief and subject to continuing discovery, a pattern and not an isolated event.

87. A violation of any law, statute, rule or ordinance which proscribes unfair methods of competition, or unfair, deceptive or unconscionable acts or practices is also a *per se* violation of FDUTPA.

88. As a result of Defendant's unfair and deceptive trade practices, Plaintiff has been damaged. He is entitled to rescind

the Contract and recover actual and statutory damages and attorneys' fees in accordance with §§501.211 and .2105, Florida Statutes.

### COUNT VIII: ACTION FOR ACCOUNTING

89.  Plaintiff FLEMING incorporates Paragraphs 2 through 28, 55 through 60, 62 through 65, 67 through 73 and 75 through 79 above as if set forth in their entirety herein.

90. This is a cause of action for equitable and statutory relief against Defendants DEVELOPER, TITLE CONCEPTS and SUNTRUST seeking an accounting, together with supplemental damages, attorneys' fees and costs.

91.  Defendant DEVELOPER initially designated TITLE CONCEPTS as the escrow agent for the parties under the Contract and SUNTRUST has moved to substitute itself to provide certain services as escrow agengt.[2]

92.  Mr. FLEMING  does not possess a copy of the written escrow agreement identified in the Contract, and neither DEVELOPER nor SUNTRUST have yet supplied him with such a copy. Alternatively, even if no written escrow agreement is available or applicable, TITLE CONCEPTS undertook to act as the parties' escrow agent and, therefore, has common law and statutory duties and responsibilities to FLEMING.

93.  Pursuant to common law principles and/or as sometimes

---

[2]  SUNTRUST recently moved, in the DEVELOPER/Debtor's Chapter 11 case, to become the substitute escrow agent for all monies previously held by TITLE CONCEPTS, and an order approving the terms and conditions of substitution was entered in November 2009.

codified in statutory law (including but not limited to the requirements of §626.8473, Fla. Stat.), TITLE CONCEPTS occupies a position of trust to the parties and has fiduciary duties to FLEMING to account for escrowed deposit funds.

94. The DEVELOPER, TITLE CONCEPTS and SUNTRUST are thus required to provide information and documentation to Mr. FLEMING relating to at least the following accounting subjects:

(a) The dates on which Mr. FLEMING's $166,800.00 in Contract deposits were forwarded by the DEVELOPER to TITLE CONCEPTS and escrowed pursuant to the Contract and under which account number and financial institution;

(b) Whether the subject escrow account is interest bearing, and if so, the amount of interest accrued to date;

(c) Whether, when and under what circumstances any of Mr. FLEMING's deposit monies (and/or any accrued interest) were disbursed to the DEVELOPER, or any other person or entity, including TITLE CONCEPTS and SUNTRUST;

(d) All documents and information concerning the DEVELOPER's and TITLECONCEPTS' compliance with §718.202, Florida Statutes;

(e) The current balance of all funds being held pending disposition of the subject Contract, the applicable account number and financial institution;

(f) Whether any provisions or conditions existed within the escrow agreement or otherwise which DEVELOPER or TITLE CONCEPTS contends would have prohibited them from immediately disbursing all escrowed funds and interest directly to Mr. FLEMING prior to the subject bankruptcy filing on May 6, 2009, particularly given that the DEVELOPER was never in a position to close any sale with Mr. FLEMING or any other contract purchaser prior to that time;

(g) Whether DEVELOPER, TITLECONCEPTS or SUNTRUST intend to make any claim to Mr. FLEMING's escrowed funds, and if so, the amount and basis for same; and

(h) Whether DEVELOPER, TITLECONCEPTS or SUNTRUST contend that there is some dispute over the obligations to account for Mr. FLEMING's substantial deposit funds.

## COUNT IX: IMPOSITION OF PRIORITY
## STATUTORY OR EQUITABLE LIEN

95.   Plaintiff FLEMING incorporates Paragraphs 2 through 28, 30 through 45, 49 through 53, 56 through 60, 63 through 65, 68 through 73, 76 through 79  and 82 through 88 above as if set forth in their entirety herein.

96.   This is an action against DEVELOPER, TITLE CONCEPTS and SUNTRUST seeking imposition of a priority statutory or equitable lien against the unit which is the subject of the Contract between the DEVELOPER and FLEMING, and/or the overall estate of the DEVELOPER, in the amount of Mr. FLEMING's deposits, interest, costs and attorneys' fees.

97.   As detailed in Counts I - VII above, Mr. FLEMING is entitled to recover from the DEVELOPER his substantial deposit monies, together with interest, attorneys' fees and costs.

98.   Given its pre-petition breaches of the Contract and the numerous reasons for termination and rescission of same, Defendant DEVELOPER has no valid claim against Mr. FLEMING's deposits. Accordingly, Mr. FLEMING's deposit funds should either not be included within, or are no longer part of, the bankruptcy estate.

99.   FLEMING is, alternatively, a secured creditor with  a priority rejection damages claim under 11 U.S.C. §365(j), and a lien against the Condominium Unit which is the subject of the Contract.   To the extent that the DEVELOPER hopes to obtain approval for a reorganization plan calling for operating the Condominium Project as a hotel, it would be unlawful and inequitable to allow it to reject executory contracts without

returning FLEMING's Contract deposits.

100. Defendant SUNTRUST has claimed, in the related Chapter 11 case, that it is somehow entitled to a priority, contingent claim against FLEMING's deposit monies (including any funds held by Defendant TITLE CONCEPTS or itself as substitute escrow holder; *see* footnote 2, *supra*). Such claim must be rejected for reasons including, but not limited to, the following:

a.　the undisputed facts, statutes and precedent support FLEMING's claims for breach of contract, termination and rescission;

b.　the DEVELOPER has not and cannot deliver a condominium unit to FLEMING long after the two year deadline for completion of construction and closing have expired;

c.　while SUNTRUST had - or should have had with the exercise of due diligence - notice of FLEMING's Contract and deposit monies when negotiating for and approving a construction mortgage to the DEVELOPER, it did nothing to assure the priority of its mortgage lien over such deposits;

d.　any so-called "utilized deposits" for "development" already expended by the DEVELOPER (though improperly) have already improved the value of the collateral pledged to SUNTRUST under the construction mortgage; and/or

e.　to the extent that deposit monies are allegedly "personal property" pledged by the DEVELOPER as mortgagor, to SUNTRUST, as mortgagee, according to the SUNTRUST Mortgage, such deposits are "subject to the terms of the purchase and sale contracts ... pursuant to which such deposits are held."[3] Hence, SUNTRUST's own form of mortgage expressly states that SUNTRUST's interest in such collateral is subject to the terms of the Contract - which the DEVELOPER has manifestly breached.

101. In other words, SUNTRUST's only (non-priority, inferior)

---

[3] *See* Exhibit "B" to SUNTRUST mortgage recorded June 22, 2007 in O.R. Book 9315, page 3633 of the Public Records of Orange County, Florida (which mortgage is attached as Exhibit "A" to the Motion for Relief from Stay filed by SUNTRUST on August 24, 2009).

claim against the DEVELOPER's interests in FLEMING's contract deposits is contingent upon pre-petition events which have already occurred and which confirm FLEMING's entitlement to return of his deposits. SUNTRUST is not in a position to contest the Contract and the DEVELOPER's breach of same, and similarly is not in a position to contest whether the Contract is contingent upon the DEVELOPER's performance under the executory Contract (which performance has been untimely and now, impossible).

102. SUNTRUST may have attempted to condition approval of its construction loan to the DEVELOPER on the DEVELOPER's receipt of deposit monies from prospective purchasers, including Mr. FLEMING, and even ostensibly required the DEVELOPER to obtain so-called "estoppel" agreements from such purchasers.

103. SUNTRUST, however, did not enforce any such requirement as to the Contract between the DEVELOPER and Mr. FLEMING, the latter of whom *never executed such a subordination agreement*.[4] Such estoppel agreements are, furthermore, questionable on their face in that same have the appearance of simple letters, rather accurately being labeled as "subordination agreements." With the use of ostensibly obfuscatory language in its subordination agreements, SUNTRUST was, in effect, forcing purchasers to become involuntary joint venturers with the lender and DEVELOPER in the Condominium Project without adequately explaining as such.

104. SUNTRUST coveted the benefits of "committed purchasers"

---

[4] SUNTRUST attached 23 "estoppel agreements" to its Motion for Relief from Stay - which did not include any such agreement signed by FLEMING.

and the value which "utilized deposits" brought to the Condominium Project. SUNTRUST apparently had a plan to establish the priority of its construction mortgage by requiring contract purchasers to execute subordination agreements but then failed to follow up and ensure that all contract purchasers executed such agreements. It thus defies logic, equity and common sense to allow SUNTRUST a contingent, priority claim over deposit monies tendered by contract purchasers, such as FLEMING, who never agreed, expressly or otherwise, to subordinate contractual rights - as to enforcing return of contract deposits - to SUNTRUST.

105. Moreover, any such priority claim by SUNTRUST over FLEMING's deposit monies, or his rejection damages, must be inferior both in time and dignity to those of Mr. FLEMING. FLEMING's Contract was executed and his deposits were placed into escrow well before the recording of the SUNTRUST construction mortgage. SUNTRUST simply cannot avail itself of any express subordination agreement, contractual provision, procedure, or equitable trust, which might conceivably allow it to claim some priority over FLEMING's secured, priority claim.

106. Given the paucity of cash generated from the DEVELOPER/Debtor's debtor-in-possession efforts and the devaluation of real estate values generally and for the subject project specifically, SUNTRUST desperately covets any other buyers' deposits monies which would otherwise be "forfeited"[5] to the

---

[5] Some prospective buyers of the DEVELOPER/Debtor's Condominium Units have not demanded return of deposits, filed any pre- or post-bankruptcy litigation for return of deposits and/or have not even filed proofs of claim

DEVELOPER/Debtor. Nevertheless, Mr. FLEMING should be entitled to a priority, secured lien as to such "forfeited deposits" to the extent that his §365(j) damages cannot be recovered against the Condominium Unit which is the subject of the Contract (or is not otherwise recoverable directly from TITLE CONCEPTS or from SUNTRUST as successor escrow agent).

107. The Court should exercise, alternatively, its equitable powers to establish a priority equitable lien in the amount of $166,800.00, together with interest, attorneys' fees and costs, and otherwise hold that SUNTRUST has only an inferior claim to the same unit and then the Debtor's estate as a whole. Again, Mr. FLEMING's deposits have improved SUNTRUST's collateral, the bank did nothing to establish mortgage lien priority where Mr. FLEMING is concerned, and the DEVELOPER is incapable of performing under the CONTRACT.

108. Because neither the DEVELOPER nor SUNTRUST possess any valid objections to, or contingent claims against, Mr. FLEMING's deposit funds, Defendants TITLECONCEPTS or SUNTRUST should be required to immediately disburse all sums held as his escrow agent. This amount is believed to be, at minimum, $55,600.00 and, at most, $166,800.00, plus accrued interest.

109. Should TITLE CONCEPTS' or SUNTRUST's escrowed funds or other liability fail to satisfy Mr. FLEMING's secured, priority claim, the Court should further authorize disbursement of additional funds held by the current escrow agent (whether TITLECONCEPTS or SUNTRUST) - such as those generated from other

---

in the Chapter 11 case.

contract purchasers who expressly abandoned or forfeited deposit monies to the DEVELOPER.

110. Mr. FLEMING is thus entitled to the following:

i.    all escrowed funds held by TITLE CONCEPTS or SUNTRUST, or to recover damages directly against TITLE CONCEPTS;

ii.   a priority statutory and equitable claim against an identifiable unit within the Condominium Project;

iii.  a priority statutory and equitable claim to deposits deemed "forfeited" by other contract purchasers to the extent that FLEMING's §365(j) damages can not be recovered against the Condominium Unit; and

iv.   a claim, generally, as to any balance owed, against the remainder of the Debtor's estate, including deposits "forfeited" by any other contract purchasers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff FLEMING prays for a judgment as follows:

1.    As to Counts I and II, sounding in violations of ILSA and FULSPL against Defendant DEVELOPER only, a judgment rescinding the parties' Contract, compelling the immediate return of deposits equaling 15% of the Contract price (ILSA only), awarding damages in the amount of the entire (or remainder of) deposits, supplemental damages, pre-judgment and post-judgment interest, statutory attorneys' fees and costs;

2.    As to Counts III and IV, a judgment sounding in breach of contract and conversion against Defendant DEVELOPER only, compensatory damages, pre-judgment and post-judgment interest, and contractual attorneys' fees and costs;

3.    As to Count V, sounding in Chapter 718, Florida Statutes, remedies available against the DEVELOPER only, a judgment confirming Contract cancellation and rescision, awarding

compensatory damages in the amount of the deposits tendered to DEVELOPER, pre-judgment and post-judgment interest, costs, and statutory attorneys' fees;

4.    As to Count VI, a judgment voiding the Contract and for damages against DEVELOPER and TITLE CONCEPTS under §718.202, Florida Statutes;

5.    As to Count VII, a non-dischargeable judgment sounding in violations of FDUTPA against Defendant DEVELOPER only, actual and statutory damages, pre-judgment and post-judgment interest, and statutory attorneys' fees and costs;

6.    As to Count VIII, an order or judgment requiring DEVELOPER, TITLE CONCEPTS and SUNTRUST to account for their actions and inactions with respect to Mr. FLEMING's deposits monies while they should have been properly escrowed and not disbursed;

7.    As to Count IX, seeking the imposition of a priority statutory or equitable lien against Defendants DEVELOPER, SUNTRUST and TITLE CONCEPTS, a judgment confirming Contract cancellation and rescission, awarding compensatory damages in the amount of the deposits tendered to DEVELOPER, pre-judgment and post-judgment interest, costs and contractual and statutory attorneys' fees, and an order establishing a priority, statutory or equitable lien in FLEMING's favor over and against any objections or contingent claims asserted by Defendants DEVELOPER, TITLE CONCEPTS and/or SUNTRUST, and further against any deposits "forfeited" by other contract purchasers;

8.    Plaintiff further requests that the Court issue an order

or an injunction, if necessary, requiring  Defendant TITLE CONCEPTS and SUNTRUST to account for and pay all funds they are holding on behalf of FLEMING to the U.S. Trustee at their own expenses, and ultimately directing payment of all such funds over to Plaintiff; and

9.  That the Court award such other and further relief deemed just and proper.

DATED this  7th  day of January, 2010.


/s/ Peter R. McGrath
Peter R. McGrath, Esq.
Florida Bar No.: 779245
PETER R. McGRATH, P.A.
801 North Magnolia Avenue
Suite 317
Orlando, Florida 32803
(407) 872-7010
ATTORNEY FOR PLAINTIFF